| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| SOFIA GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:25-CV-156 |
| | § | |
| LUCKY BROTHERS, INC., and YAN | § | |
| FRISBY, *surviving spouse and heir of Steve* | § | |
| *Frisby*, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendants Lucky Brothers, Inc. ("Lucky Brothers") and Yan Frisby's ("Y. Frisby") (collectively "Defendants") Corrected Motion to Exclude Purported Expert Testimony of Gary D. Kronrad, Ph.D. (#37). Plaintiff Sofia Garcia ("Garcia") filed a Response (#40) in opposition, and Defendants filed a Reply (#44). Having considered the pending motions, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Defendants' motion should be granted in part and denied in part.

I.    Background

The present lawsuit arises out of an automobile collision between Steve Frisby ("S. Frisby"), a truck driver employed by Lucky Brothers at the time of the incident, and Garcia. On March 28, 2023, Garcia was driving on Interstate Highway 10 in Jefferson County, Texas, when a tractor-trailer operated by S. Frisby allegedly failed to maintain its lane of travel. The tractor-trailer collided with Garcia's vehicle and pushed it into a concrete retaining wall. As a result of the incident, Garcia allegedly sustained "severe and disabling injuries to her body generally, including her head, brain, neck, back, central nervous system, spine and associated

muscles, ligaments, nerves and/or discs, shoulder, arm, extremities and body generally resulting in a number of medical symptoms and/or adverse reactions reducing the quality of her life."

On January 22, 2024, Garcia filed her Original Petition (#2) in the 60th Judicial District Court of Jefferson County, Texas. Garcia's Original Petition asserted claims of negligence and negligence *per se* against S. Frisby and Lucky Brothers for injuries arising from the automobile collision. On October 2, 2024, S. Frisby died from causes unrelated to the incident. Consequently, Garcia filed her First Amended Petition (#3) on January 14, 2025, naming Y. Frisby as S. Frisby's surviving heir and spouse. On March 28, 2025, Lucky Brothers removed the case to this court, and on January 15, 2026, Defendants filed the pending Motion to Exclude Purported Expert Testimony of Gary D. Kronrad, Ph.D.

II.    Analysis

The admission, exclusion, or limitation of expert witness testimony is a matter that is left to the discretion of the district court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see Wunstell v. BP, P.L.C.*, No. 23-30859, 2024 WL4100496, at *1 (5th Cir. Sept. 6, 2024); *Braggs v. BP Expl. & Prod., Inc.*, No. 23-30297, 2024 WL 863356, at *2 (5th Cir. Feb. 29, 2024); *United States v. Herman*, 997 F.3d 251, 269 (5th Cir. 2021); *Hicks-Fields v. Harris County*, 860 F.3d 803, 810 n.22 (5th Cir. 2017). Pursuant to Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
>> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

(b)      the testimony is based on sufficient facts or data;

(c)      the testimony is the product of reliable principles and methods; and

(d)      the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702; *accord Kumho Tire Co.*, 526 U.S. at 152; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Prior to admitting expert testimony, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)); *accord* FED. R. EVID. 702; *Albert v. City of Petal*, 819 F. App'x 200, 202 (5th Cir. 2020). Accordingly, "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)); *see United States v. Chisley*, No. 22-40584, 2023 WL 4864811, at *1 (5th Cir. July 31, 2023); *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *Henderson v. Atmos Energy*, 496 F. Supp. 3d 1011, 1015 (E.D. La. 2020).

"The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *Robles v. Eminent Med. Ctr.*, 619 F. Supp. 3d 609, 647 (N.D. Tex. 2022) (citing *Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)); *see Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 809 (5th Cir. 2018) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998))). The court plays the role of a gatekeeper,

determining the admissibility of "all types of expert testimony, not just scientific testimony." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)); *accord Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, 534 F. Supp. 3d 694, 696 (E.D. Tex. 2021).   In this role, "trial courts make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (quoting *Daubert*, 509 U.S. at 592-94); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).   The district court should approach this task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions."   *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *accord United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 507 F. Supp. 3d 734, 746 (W.D. Tex. 2020).

The trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system.   *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *14.38 Acres of Land*, 80 F.3d at 1078).   Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."   *Whalen v. Monsanto Co.*, No. 24-30105, 2024 WL 4524170, at *7 (5th Cir. Oct. 18, 2024) (quoting *Daubert*, 509 U.S. at 596); *accord Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019); *Dearmond v. Wal-Mart La. LLC*, 335 F. App'x 442, 444 (5th Cir. 2009) ("Cross-examination at trial . . . is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of

[the fact finder].”). “The *Daubert* analysis should not supplant trial on the merits.” *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Pipitone*, 288 F.3d at 250). Rather, “[t]he focus . . . must be solely on principles and methodology [of the expert witness], not on the conclusions that they generate.” *Hodge*, 933 F.3d at 477 (quoting *Daubert*, 509 U.S. at 594-95); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *see Valencia*, 600 F.3d at 419. Indeed, “it is the role of the adversarial system, not the court, to highlight weak evidence.” *Primrose Operating Co.*, 382 F.3d at 563. Thus, “[w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, ‘the rejection of expert testimony is the exception rather than the rule.’” *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting *Puga*, 922 F.3d at 294).

In the present case, Garcia has designated Gary D. Kronrad (“Kronrad”), a Senior Forensic Economist, as an expert for purposes of opining on the value of Garcia’s loss of potential earning capacity, loss of past and future household services, and past and future medical expenses. Defendants challenge the admissibility of Kronrad’s expert testimony on the grounds that:

(1) his opinions regarding Garcia’s loss of earning capacity are contradicted by the evidence, based on an improper foundation, speculative, and unreliable;

(2) his opinions regarding the value of the loss of household services is unreliable, not supported by the pleadings, not based upon specialized knowledge or any objective facts, and will not assist the jury; and

(3) his opinions regarding Garcia’s past and future medical expenses is unreliable, not based upon specialized knowledge or any objective facts, and will not assist the jury.

Accordingly, the court must determine whether Kronrad’s expert testimony should be excluded under Rule 702.

A.    Loss of Earning Capacity

Defendants first challenge the admissibility of Kronrad's expert testimony regarding Garcia's loss of earning capacity.  According to Defendants, Kronrad's proposed testimony is "contradicted by the evidence, based upon an improper foundation, speculative, and unreliable." The trial court possesses considerable flexibility in assessing the reliability of expert testimony. *Kumho Tire Co.*, 526 U.S. at 141; *United States v. Schaffer*, 439 F. App'x 344, 346 (5th Cir. 2011) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)); *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010); *Alpizar v. John Christner Trucking, LLC*, 568 F. Supp. 3d 714, 717-18 (W.D. Tex. 2021).  In his expert report, Kronrad conducts two analyses regarding Garica's lost earning capacity.  Kronrad first evaluates Garcia's lost earning capacity based on the salary she earned in 2023, the year preceding the incident, and then he conducts a secondary analysis, whereby he calculates Garcia's lost earning capacity based on the assumption that, absent the collision, Garcia would have become a licensed cosmetologist and earned a salary commensurate with that position.  According to Defendants, these analyses rely on unreliable, incorrect, and speculative facts to calculate Garcia's lost earning capacity.

Regarding Kronrad's initial analysis of Garcia's lost earning capacity, Defendants contest only that Kronrad relies on the assumption that "[Garcia] would have earned $16,965 per year . . . . However, a document obtained by [Garcia] and provided to Kronrad indicates that in 2023, her total earnings were $15,017.42."  In his report, Kronrad states that he conducted the first analysis based on the amount Garcia actually earned, as it was reported to the Social Security Administration, for 2023.  Defendants attach a document from the Social Security Administration, which shows that Garcia earned $16,965.30 during the 2023 tax year.  Defendants' confusion

seemingly arises from the fact that only $15,017.42 of those funds were earned as a Teacher's Aide for Beaumont Independent School District. The remaining $1,947.88 was earned while Garcia worked at Jason's Deli in Beaumont, Texas. Nevertheless, $16,965.30 is the amount Garcia actually earned in 2023 and, despite being derived from more than one source, is indicative of her earning capacity in 2023. Kronrad's use of that figure is not unreasonable and does not render his opinion unreliable. Therefore, Defendants' assertions with respect to Kronrad's initial analysis are without merit.

Regarding Kronrad's secondary analysis, Defendants maintain Kronrad's opinion on Garcia's lost earning capacity is unreliable because it is based on the assumption that, but for the collision, Garcia would have become a licensed cosmetologist. According to Defendants, Kronrad's testimony is inadmissible because Garcia is not a licensed cosmetologist, there is no evidence suggesting that she would have become a cosmetologist, and recovery for lost earning capacity is limited to the plaintiff's capacity to earn a livelihood at the time of the collision. Defendants' objections, however, seemingly attempt to invade the province of the jury.

In Texas, damages for "lost earning capacity" assess the "plaintiff's capacity to earn a livelihood prior to injury and the extent to which the injury impaired that capacity. This measure of damages is not measured by what a person actually earned before the injury but by the person's capacity to earn, even if she had never worked in that capacity in the past." *Huston v. United Parcel Serv., Inc.*, 434 S.W.3d 630, 640 (Tex. App.—Hous. [1st Dist.] 2014, pet. denied) (citations omitted); *Exxon Mobil Corp. v. Brown*, 729 S.W.3d 625, 658 (Tex. App.—Hous. [14th Dist.] 2026, no pet.). While calculating one's future earning capacity is an exercise in uncertainty, the fact finder cannot venture into the realm of conjecture and must base its decision

7

upon the facts available in the particular case. *Findley v. PetCo Animal Supplies, Inc.*, No. H-13-1941, 2014 WL 2939395, at \*2 (S.D. Tex. June 27, 2014); *Smith v. Lowe's Home Ctrs., Inc.*, No. Civ.SA-03-CA-1118 XR, 2005 WL 1533108, at \*6 (W.D. Tex. June 29, 2005). Furthermore, although the law is clear that "an expert may not be used as a vehicle through which a party introduces inadmissible facts, 'experts are permitted to assume the underlying facts that form the basis for their opinions.'" *Cervantez v. Collier*, 2019 WL 6727872, at \*3 (W.D. Tex. Dec. 11, 2019) (citing *Cromwell v. Wal-Mart Stores, Inc.*, 46 F. App'x 733 (5th Cir. 2002)).

Here, Kronrad's expert testimony does not seek to introduce inadmissible facts. Rather, Kronrad's testimony simply assumes the truth of the evidence Garcia intends to present to the jury, which are relevant to the damages Garcia may recover under Texas law. As noted above, in Texas, a plaintiff may recover for lost earning capacity based on a career she has not yet started if she can establish by a preponderance of the evidence that the "earnings from that occupation would provide a true measure of that plaintiff's earning capacity." *JLG Trucking LLC v. Garza*, 461 S.W.3d 554, 562 (Tex. App.—San Antonio 2013, pet. granted), *rev'd on other grounds*, 466 S.W.3d 157 (2015). Evidence of intent to pursue a particular occupation is admissible to advance this point. *Id.* (noting that evidence regarding the plaintiff's pursuit of an accounting degree, her determination to finish the degree, and the likelihood of her doing so was admissible and supported the plaintiff's damages award). According to Garcia, she intends to adduce evidence at trial demonstrating that she completed one year of cosmetology school in Guatemala in 2018 before moving to the United States. Garcia further intends to put forth evidence that she was "continuing to hone her skills in that field, and fully intended to complete such training prior to the incident [giving] rise[] to suit." Thus, Kronrad's opinion regarding Garcia's lost earning capacity simply

assumes that the evidence Garcia plans to present to the jury is correct—namely, that she intended to pursue a career in cosmetology. *See Tisdale v. Marquette Trans. Co., LLC*, No. 22-00237, 2024 WL 2033933, at *7 (E.D. La. 2024) (holding that an expert may rely on one version of disputed facts); *Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 934 (M.D. La. 2021) (recognizing that an expert may render an opinion based on the assumption that one party's version of the facts is true); *Williams Consolidated I, Ltd. v. Smith*, No. 4:08-CV-766, 2009 WL 10698215, at *21 (S.D. Tex. Oct. 19, 2009). Ultimately, it will be for the jury to decide whether Garcia has met her burden of demonstrating that cosmetology was a reasonably probable career path, such that a cosmetologist's salary reflects the true measure of her lost earning capacity. Consequently, the court is not inclined to exclude expert testimony that could help the fact finder determine the amount of Garcia's damages in the event she succeeds in that endeavor.

B.      Loss of the Value of Household Services

Next, Defendants maintain that Kronrad's expert testimony regarding the loss of the value of Garcia's household services should be excluded as it is "not supported by the pleadings, not based upon specialized knowledge, will not assist the jury, is not based on any objective facts, and is unreliable." First, regarding the sufficiency of Garcia's pleadings, Defendants are correct that Garcia does not plead loss of household services as one of her items of special damages as required by Rule 9(g) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 9(g). Nevertheless, the United States Court of Appeals for the Fifth Circuit has held that the failure to plead a specific item of special damages will not bar recovery if the claim has been advanced by the plaintiff pre-trial and the defect can be cured by amendment. *See Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 211 n.1 (5th Cir. 1992); *see* 5A WRIGHT & MILLER'S FEDERAL PRACTICE AND

9

PROCEDURE § 1312 (4th ed. 2026). Given that this case remains pending and will not proceed to trial for some time, the court is of the opinion that the exclusion of such testimony at this juncture would be improper, as Defendants clearly have notice of Garcia's intent to pursue this item of special damages and the issue can be cured by amendment.

Second, Defendants object to the admission of Kronrad's testimony on the grounds that "he is not a vocational expert and has no specialized knowledge or expertise for opining that [Garcia] has any reduced ability to perform household services." In his report, however, Kronrad clearly states that he will not opine on Garcia's reduced ability to perform household services. Kronrad also notes that he will not "testify about the numbers of hours lost or the cost to hire someone to perform those [services]." Rather, as Garcia explains in her response, the information regarding her reduced ability to provide household services will come from her own testimony and the testimony of her friends and family. Kronrad will simply be providing a method by which the jury can calculate the value of those lost services. Therefore, Defendants' second objection is without merit.

Third, Defendants take issue with the fact that Kronrad allegedly has not considered any of the specific services Garcia is unable to provide to her household and opining that "Plaintiff should recover the 'Federal minimum wage rate, $7.25 per hour,' multiplied by a time factor of '10 hours per week,' for some unspecified number of years." Defendants, however, misconstrue Kronrad's expert report. In his report, Kronrad states that

> the most conservative method of evaluating the loss of household services involves determining the number of hours that would be consumed in accomplishing the chores and multiply the result by the wage rate that would have to be paid to hire someone to do that work. ***As an example of how this calculation would be performed,*** I have calculated the present value of wages using 10 hours per week.

Kronrad then proceeds to conduct his analysis using the federal minimum wage, noting that these numbers are "only an example" and can "easily be adjusted to whatever number . . . may be eventually assigned . . . based on testimony heard by the jury." Kronrad's report makes it quite clear that the numbers used represent only an example of how to apply his proposed formula. Accordingly, Kronrad will be opining on the narrow issue of a method or formula that could be used to calculate the value of Garcia's lost household services, not her diminished capacity to provide those services or even the value of such services.

Fourth, Defendants assert that Kronrad's testimony will not be helpful to the jury because "the value of household services is within the common knowledge of the jury." Here, Garcia agrees with Defendants and notes that Kronrad will not opine on the value of household services. Rather, he will simply provide a formula that the jury may use to calculate the value of the loss of those services under Garcia's specific circumstances. In his report, Kronrad makes it clear that he will not testify regarding the typical cost of certain household services. Hence, Kronrad's testimony will not be duplicative of information that is within the common knowledge of the jury. Therefore, Defendants' fourth contention is without merit.

C.     Past and Future Medical Expenses

Lastly, Defendants contend that Kronrad's expert testimony regarding Garcia's past and future medical expenses should be excluded because it is not "based upon specialized knowledge, will not assist the jury, is not based on any objective facts, and is unreliable." In his report, Kronrad states that

> Future medical expenses are composed of two categories: medical services and medical commodities. In determining the expected average annual cost of each of these categories, "real" cost increases are included in the analyses: 1.94% for medical services and 1.11% for medical commodities . . . . A real discount rate of

> 2.12% was employed . . . . (The figures shown next to each of the following four categories is the amount of money that would have to be given today to pay a $1,000 charge per year until life expectancy).

Based on the above analysis, Defendants assert that "Kronrad is not a medical expert and has no specialized knowledge or expertise for opining that Plaintiff will incur a $1,000 medical charge per year for the remainder of her life expectancy."  Garcia, however, sidesteps Defendants' concern regarding Kronrad's qualifications to testify about Garcia's future medical expenses and, instead, focuses on the fact that economists routinely provide testimony on "how the cost of future medical expenses can be properly discounted to present value."

In his expert report, it is unclear whether Kronrad intends to present the figures provided in the report as indicative of Garcia's actual future medical expenses discounted to present value. Alternatively, it is possible that, similar to his opinion with respect to household services, the numbers are used merely as an example of the proposed methodology he intends to present to the jury to discount Garcia's future medical expenses to present value.  Although the court agrees that Kronrad is qualified to opine on how to discount Garcia's medical expenses to present value, it cannot conclude that he is qualified to testify regarding the nature of Garcia's future medical expenses.  Kronrad is not a medical expert and has no basis for testifying about Garcia's specific medical needs in the future or the cost of such needs.  Therefore, the court will exclude Kronrad's testimony to the extent he seeks to opine on the nature and amount of Garcia's future medical expenses.  Kronrad's testimony regarding Garcia's future medical expenses, however, will be permitted to the extent he simply seeks to establish how to discount Garcia's future medical expenses, as established by other evidence, to present value.

III.    <u>Conclusion</u>

Based on the foregoing analysis, Defendants' Corrected Motion to Exclude Purported Expert Testimony of Gary D. Kronrad, Ph.D. (#37) is GRANTED in part and DENIED in part.

SIGNED at Beaumont, Texas, this 24th day of July, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE