**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| SOFIA GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:25-CV-156 |
| | § | |
| LUCKY BROTHERS, INC., and YAN FRISBY, *surviving spouse and heir of Steve Frisby*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendants Lucky Brothers, Inc. ("Lucky Brothers") and Yan Frisby's ("Y. Frisby") (collectively "Defendants") Motion for Partial Judgment on the Pleadings and Alternative Motion for Partial Summary Judgment (#33), wherein Defendants ask this court to grant judgment on Plaintiff Sofia Garcia's ("Garcia") gross negligence claims. Garcia filed a Response (#45) in opposition, and Defendants filed a Reply (#47). Having considered the pending motions, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Defendants' motion should be granted in part and denied in part.

I. Background

The present lawsuit arises out of an automobile collision between Steve Frisby ("S. Frisby"), a truck driver employed by Lucky Brothers at the time of the incident, and Garcia. On March 28, 2023, Garcia was driving on Interstate Highway 10 in Jefferson County, Texas, when a tractor-trailer operated by S. Frisby allegedly failed to maintain its lane of travel. The tractor-trailer collided with Garcia's vehicle and pushed it into a concrete retaining wall. As a result of the incident, Garcia allegedly sustained "severe and disabling injuries to her body

generally, including her head, brain, neck, back, central nervous system, spine and associated muscles, ligaments, nerves and/or discs, shoulder, arm, extremities and body generally resulting in a number of medical symptoms and/or adverse reactions reducing the quality of her life."

On January 22, 2024, Garcia filed her Original Petition (#2) in the 60th Judicial District Court of Jefferson County, Texas. Garcia's Original Petition asserted claims of negligence, gross negligence, and negligence *per se* against S. Frisby and Lucky Brothers for injuries arising from the automobile collision. On October 2, 2024, S. Frisby died from causes unrelated to the incident. Consequently, Garcia filed her First Amended Petition (#3) on January 14, 2025, naming Y. Frisby as S. Frisby's surviving heir and spouse. On March 28, 2025, Lucky Brothers removed the case to this court, and on January 14, 2026, Defendants filed the pending Motion for Partial Judgment on the Pleadings and Alternative Motion for Partial Summary Judgment (#33). Garcia filed a Request to Abate and Response in Opposition (#46) on February 5, 2026.[1]

II. Analysis

As a preliminary matter, the court must determine the appropriate standard to employ in evaluating Defendants' alternative motions. A motion for judgment on the pleadings under Rule 12(c) asks the court to dispose of the case "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleading and any judicially noticed facts." *Adegbenro v. Bank of Am., N.A.*, No. 4:22-cv-00828, 2023 WL 4275507, at *3 (S.D. Tex. June 12, 2023). In evaluating a Rule 12(c) motion, courts employ the

[1] The court need not consider Garcia's request to abate, as the request was predicated on a discovery dispute that the parties informed the court was resolved in March 2026. Because Garcia has had ample time to supplement the record following the resolution of that dispute, her request to abate the pending motion is no longer relevant.

same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6), which asks whether "plaintiffs' pleadings . . . allege enough facts to 'state a claim to relief that is plausible on its face." *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2015 1757358, at *1 (N.D. Tex. Apr. 17, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Q Clothier New Orleans L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022). A motion for summary judgment, however, asks whether the plaintiff has raised "a genuine dispute of material fact." *Adegbenro*, 2023 WL 4275507, at *3. A key distinction between a Rule 12(c) and a Rule 56 motion is that the court can only consider the pleadings and judicially noticed facts under Rule 12(c), while Rule 56 permits the consideration of extrinsic evidence. *Id.* at 3-4.

Although there exists some divergence in how courts handle alternative motions arising under Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure, a number of courts have recognized that such motions may be construed and evaluated solely under the summary judgment standard. *Slone v. State Auto Prop. & Cas. Ins. Co.*, No. 2:19-cv-00408, 2021 WL 190938, at *4 (S.D.W. Va. Jan. 19, 2021); *Jackson v. Sagal*, 370 F. Supp. 3d 592, 598 (D. Md. 2019); *Logan v. Dollar Tree Stores, Inc.*, No. 6:19-CV-1769-TMC, 2019 WL 13273849, at *2 (D.S.C. Oct. 21, 2019). The rationale being that, despite filing the motions in the alternative, the movant has essentially converted the motion into a motion for summary judgment by attaching extrinsic evidence. Therefore, the court will evaluate Defendants' motion only as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[2]

---

[2] Additionally, the court is of the opinion that it would have reached the same conclusion under either analysis.

A. Summary Judgment Standard

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party. *See Union Pac. R.R. Co. v. Palestine*, 41 F.4th 696, 703 (5th Cir. 2023); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019); *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *King v. King*, 117 F.4th 301, 308 (5th Cir. 2024); *Union Pac. R.R. Co.*, 41 F.4th at 703; *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)); *see MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Lexon Ins. Co., Inc. v. Fed. Deposit Ins.*

*Corp.*, 7 F.4th 315, 321 (5th Cir. 2021); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *accord Valencia v. Davis*, 836 F. App'x 292, 296 (5th Cir. 2020); *see Dyer*, 964 F.3d at 379. "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Gerhart v. Barnes*, 724 F. App'x 316, 321 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, at *6 n.7 (5th Cir. Apr. 20, 2023); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Thus, "[a] genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368 (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)); *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021); *Dyer*, 964 F.3d at 379; *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 410 (5th Cir. 2020). The court "should review the record as a whole." *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022); *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021); *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255); *Dietrich v. United Parcel Serv., Inc. (Ohio)*, No. 24-50316, 2025 WL 445050 at *3 (5th Cir. Feb. 10, 2025); *Seigler*, 30 F.4th at 476; *Batyukova*, 994 F.3d at 724; *Lyons*, 964 F.3d at 302. The evidence is construed "in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Johnson v. Cooper T. Smith Stevedoring Co., Inc.*, 74 F.4th 268, 275 (5th Cir. 2023) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *accord Lexon Ins. Co., Inc.*, 7 F.4th at 321; *Geovera Specialty Ins. Co. v. Odoms*, 836 F. App'x 197, 200 (5th Cir. 2020) (quoting *Little*, 37 F.3d at 1075).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Lyons*, 964 F.3d at 302; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 560 (5th Cir. 2019). "[W]here the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can

exist." *Goode v. Greenstream Int'l, L.L.C.*, 751 F. App'x 518, 521 (5th Cir. 2018) (quoting *Nichols v. Enterasys Networks, Inc.*, 595 F.3d 185, 188 (5th Cir. 2007)); *see Phillips v. Sanofi U.S. Servs. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 994 F.3d 704, 710 (5th Cir. 2021). In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)); *accord Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023); *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 288 (5th Cir. 2020).

B. Gross Negligence in Texas

In the case at bar, Defendants seek summary judgment only on Garcia's claim for gross negligence. Gross negligence is statutorily defined in Texas as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11); *accord Tarrant County v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019); *Suarez v. City of Texas City*, 465 S.W.3d 623, 633 (Tex. 2015); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014); *see Century Sur. Co. v. Seidel*, 893 F.3d 328, 337 (5th Cir. 2018) ("In Texas, 'gross negligence' is equivalent to 'criminal recklessness,' which, in turn, necessarily includes but is a more culpable mental state than 'criminal negligence.'"). The test for gross negligence contains both objective and subjective

prongs. *Boerjan*, 436 S.W.3d at 311; *accord King v. Cardinal Servs., LLC*, No. 2:19-CV-00217-RSP, 2021 WL 1379160, at *2 (E.D. Tex. Apr. 11, 2021); *Martinez v. Kwas*, 606 S.W.3d 446, 463 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Under the objective prong, the "extreme degree of risk," requires more than "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Boerjan*, 436 S.W.3d at 311; *accord King*, 2021 WL 1379160, at *2; *Martinez*, 606 S.W.3d at 463. Subjectively, the defendant must have "actual awareness" of the risk involved, meaning that "the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Boerjan*, 436 S.W.3d at 311 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)); *see King*, 2021 WL 1379160, at *2; *Suarez*, 465 S.W.3d at 634; *Martinez*, 606 S.W.3d at 463.

Plaintiff's burden is high. "Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence." *Forester v. El Paso Elec. Co.*, 329 S.W.3d 832, 837 (Tex. App.—El Paso 2010, no pet.) (citing *Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex. 1995)); *see Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007) ("[G]ross negligence is not synonymous with negligence, but rather requires the existence of an extreme risk of serious injury or death, evaluated both objectively and subjectively."). "[I]t is more difficult for a party to establish gross negligence than to show simple negligence because of the subjective component of gross negligence." *Resolution Tr. Corp. v. Acton*, 49 F.3d 1086, 1090-91 (5th Cir. 1995). Nonetheless, "[c]ircumstantial evidence may suffice to prove either element." *Boerjan*, 436 S.W.3d at 311 (citing *Ellender*, 968 S.W.2d at 921). To prove actual knowledge, though, circumstantial evidence "must either directly or by

reasonable inference support that conclusion." *Suarez*, 465 S.W.3d at 634 (citing *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008)). Moreover, the plaintiff bears the burden of proving her claims of gross negligence by clear and convincing evidence: "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(2), 41.003; *Petri v. Kestrel Oil & Gas Props., L.P.*, 878 F. Supp. 2d 744, 761 (S.D. Tex. 2012).

As "Texas courts have repeatedly made clear," whether driving a car or truck, conduct that would support a finding of ordinary negligence, "such as a party's failure to obey traffic laws, will not support a finding of gross negligence." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016) (collecting cases). Courts have commonly determined that conduct such as operating a vehicle at an excessive rate of speed or consciously failing to stop at a stop sign is not, standing alone, enough to constitute gross negligence. *See Rogers v. Blake*, 240 S.W.2d 1001, 1004 (Tex. 1951); *McCarty v. Moss*, 225 S.W.2d 883, 886 (Tex. App.—Austin 1949, writ ref'd); *see also Gallagher v. Lucas*, No. SA-20-CV-00072-FB, 2020 WL 7385844, at *4 (W.D. Tex. Dec. 16, 2020), *adopted by* No. CV SA-20-CA-72-FB, 2021 WL 1123643 (W.D. Tex. Jan. 12, 2021); *Phillips*, 189 F. Supp. 3d at 656. A driver's conduct must instead "be considerably more extreme," that is, "often involving multiple conscious acts or omissions." *Duplessis*, 2023 WL 8791192, at *2 (quoting *Phillips*, 189 F. Supp. 3d at 656). For example, running a stop sign due to a combination of approaching an intersection at a speed of between 56 and 58 miles per hour and "intentionally failing to observe the roadway for a period of perhaps 14 to 20 seconds" is enough to raise a fact question as to gross negligence. *Perez Librado v. M.S.*

*Carriers, Inc.*, No. CIV.A.3:02-CV-2095-D, 2004 WL 1490304, at *3 (N.D. Tex. June 30, 2004); *see Fernandez v. Transp. Designs, Inc.*, No. SA-16-CA-022-OLG, 2017 WL 1294556, at *4 (W.D. Tex. Feb. 28, 2017) (denying the defendant's motion for summary judgment on the issue of gross negligence where the plaintiffs offered evidence that the defendant "did not maintain a proper look out prior to the accident," failed to apply his brakes to avoid the collision, and "did not maintain an appropriate distance").

1. Gross Negligence of Steve Frisby

Despite Texas's high standard, the court is of the opinion that Garcia has presented sufficient evidence to, at a minimum, raise a genuine dispute of material fact as to whether S. Frisby was grossly negligent. Specifically, Garcia has set forth evidence that S. Frisby was driving in an erratic manner for a prolonged period of time, that he had a significant visual impairment, and that he consciously chose not stop and render aid to Garcia following the collision. Hence, in viewing the following facts and evidence in the light most favorable to Garcia, a reasonable jury could conclude that S. Frisby engaged in grossly negligent conduct.

a. Reckless Driving

Garcia first highlights evidence indicating that S. Frisby was driving in a reckless and erratic manner for a sufficient period of time to indicate an objective and subjective conscious disregard of the extreme degree of risk posed by his driving. An affidavit from a witness to the collision, Sherrelle Trunell ("Trunell"), states in relevant part:

> The Lucky Brothers rig came to my attention because it was operated in an alarming erratic, dangerous and unsafe manner. My impression was that the driver was ill, incompetent, impaired, under the influence, intoxicated and/or otherwise unable to operate the vehicle in a safe manner. My perception was that he was not paying attention to or [was] unaware of the presence of other vehicles on IH-10. I observed the Lucky Brothers tractor-trailer driven in this dangerous and unsafe

> manner for several minutes over the course of three miles on I-10 through Beaumont.

(Trunell Aff. Pl.'s Ex. J, at 1-2). According to Trunell, S. Frisby's tractor-trailer "swerve[d] across multiple lanes of traffic while driving at a high rate of speed" and he failed to "utilize blinker signals to alert other drivers of lane changes." (*Id.* at 2). After witnessing the collision, Trunell said her immediate fear was "loss of life."

Additionally, Trunell's account of the events is corroborated by the affidavit of David Partida ("Partida"), another witness to the incident. In his affidavit, Partida states that he "noticed a tan Freightliner tractor-trailer with California license plates driving erratically and not signaling as it moved across lanes of travel." Partida also notes that he "witnessed Frisby's trailer partially leave his lane of travel into Garcia's lane and the driver's side of her vehicle was impacted at a high rate of speed. Frisby did not signal before entering Garcia's lane of travel." After the collision, Partida followed S. Frisby to assist law enforcement in apprehending him. Partida states that, during that time, he "witnessed [S. Frisby] drive in this extremely unsafe manner for approximately 15 miles until he was stopped by law enforcement." Thus, Trunell and Partida's affidavits indicate that S. Frisby was observed driving recklessly for a significant period of time immediately before and immediately following the collision.

Defendants, however, maintain that the court should not consider any evidence of S. Frisby's conduct following the incident, as such conduct could not have been the cause-in-fact of Garcia's injuries. Defendants are correct that any post-incident conduct would not be admissible to establish the causation element of Garcia's negligence and gross negligence claims. *See Mohlenhoff v. Hobby Lobby Stores, Inc.*, No. SA-21-CV-01298-OLG, 2024 WL 4956636, at *3 (W.D. Tex. Sep. 26, 2024) ("[P]ost-incident conduct [is not] admissible at trial to prove that [the

defendant's] negligence was the proximate cause of Plaintiff's injury."), *adopted by* No. SA-21-CV-1298-OLG, 2024 WL 4998542, at *1 (W.D. Tex. Oct. 15, 2024); *James v. Dasilva Transport, Inc.*, No. 4:19-cv-592, 2021 WL 863772, at *8 (S.D. Tex. Feb. 5, 2021), *adopted by* No. 4:19-cv-00592, 2021 WL 861450, at *1 (S.D. Tex. Mar. 8, 2021). Nevertheless, post-incident conduct, especially any conduct that took place in close temporal proximity to the relevant occurrence, may be indicative of whether the defendant was acting with conscious indifference at the time of the incident. *Mohlenhoff*, 2024 WL 4956636, at *3 (recognizing that post-incident conduct may be relevant to a determination of conscious indifference for purposes of a gross negligence claim); *Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W.3d at 140 (noting that the admissibility of evidence of post-occurrence conduct or incidents depends on the proponent's purpose for offering said evidence). Accordingly, while S. Frisby's conduct following the collision could not support a claim for gross negligence on its own—absent a showing that such conduct enhanced Garcia's injuries—it may be considered to the extent that it is indicative of whether he was acting with conscious indifference at the time of the incident.

Consequently, Trunell and Partida's affidavits support a finding that S. Frisby acted with an objective disregard of the extreme degree of risk created by his conduct, because a commercial truck driver, who has been driving commercial vehicles since at least 2004, should have objectively known that a driver repeatedly weaving in between lanes at a high rate of speed in such a large vehicle without providing any indication of his intent to change lanes posed a significant risk of harm. Similarly, the witness affidavits also evince his subjective disregard of a high level of risk, as he chose not to stop once he collided with Garcia and continued to drive in the same

erratic manner for approximately 15 minutes following the collision.[3] Accordingly, the evidence of S. Frisby's reckless driving for a prolonged period of time suggests that he acted with the requisite objective and subjective disregard of an extreme degree of risk necessary to raise a genuine dispute on Garcia's claim for gross negligence.

b. Visual Impairment

Garcia has also presented evidence that S. Frisby had a significant visual impairment, of which he was aware, that may have impacted his driving on the day of the incident. Specifically, in 2004, S. Frisby suffered a retinal detachment in his right eye that left his vision impaired in that eye.[4] As a result, S. Frisby's vision at the time of the incident did not meet the minimum vision qualifications established by the Federal Motor Carrier Safety Administration ("FMCSA"). 49 C.F.R. § 391.41(b)(10). S. Frisby, however, was qualified to drive a commercial vehicle pursuant to an exemption he received from the FMCSA, which required him only to present verifiable evidence that he had driven a commercial vehicle safely with his vision deficiency for the past three years. S. Frisby maintained his exemption until a change in the law imposed additional requirements.

---

[3] It is unclear whether Defendants contend that S. Frisby did not know he had collided with Garcia. Nevertheless, as discussed below, there is evidence in the record that S. Frisby was aware of the collision and chose not to stop.

[4] A person is considered legally blind if he has a visual acuity of 20/200 or less in the better eye with the use of correcting lens. 20 C.F.R. § 404.1581; *see also Low Vision and Legal Blindness Terms and Descriptions*, American Foundation for the Blind, https://www.afb.org/blindness-and-low-vision/eye-conditions/low-vision-and-legal-blindness-terms-and-descriptions (last visited July 27, 2026). The record indicates that S. Frisby had a visual acuity of 20/400 in his right eye. Accordingly, while S. Frisby was not legally blind, as legal blindness is determined based on the acuity of a person's better eye, the vision in his right eye was significantly impaired and fell well below the visual acuity standard used to gauge legal blindness.

Garcia goes to great lengths to establish that, at the time of the incident, S. Frisby was not in compliance with the recently enacted Alternative Vision Standard, which abolished and replaced the vision exemption program. Garcia also presents evidence that S. Frisby knew of his non-compliance, as the new regulation required notification by letter to be sent to holders of the vision exemption, informing them of the new regulations and the deadline for compliance. *See* Qualifications of Drivers; Vision Standard, 87 Fed. Reg. 3390, 3391 (Jan. 21, 2022). Although the court agrees that S. Frisby's knowledge of his non-compliance with a new, seemingly enhanced qualification process is relevant to whether he consciously disregarded an extreme degree of risk, the court does not find it of significant weight, given that S. Frisby had driven with relatively minimal incidents in the years immediately preceding the collision and he had been in compliance with the applicable vision regulations until six days before the incident with Garcia.[5] More pertinent, however, is S. Frisby's decision to continue driving despite experiencing significant difficulty in maintaining his lane, while knowing of his serious visual impairment.

As noted above, S. Frisby's vision had been impaired since 2004. Accordingly, at the time of the incident, S. Frisby had approximately 16 years of experience driving with his specific impairment.[6] Additionally, S. Frisby is impaired in his right eye. Notably, there is some evidence in the record to suggest that S. Frisby's difficulty with maintaining his lane may have been related to his visual impairment, which impacted his vision in his right eye, as the video

[5] In January 2022, the alternative vision standard was enacted. The alternative standard replaced and voided the vision exemption program under which S. Frisby had previously been permitted to drive. Following the enactment of the alternative vision standard, all drivers who held a vision exemption under the old regulations were given notice of the change and informed that they had one year to comply with the requirements of the new standard. The deadline to comply with the alternative vision standard was March 22, 2023, a mere 6 days before S. Frisby's collision with Garcia.

[6] S. Frisby did not work as a commercial driver during 2011-2014.

captured by Trunell immediately following the collision shows S. Frisby crossing the white line on the right side of his vehicle a number of times and correcting the vehicle to return to his original lane. Thus, there is evidence that S. Frisby knew of his visual impairment, knew he was failing to maintain his lane, and knew that his difficulty maintaining his lane could have been related to his visual impairment. Nevertheless, he continued to drive, ultimately hitting Garcia, who was located on the right side of his vehicle. Therefore, the evidence of S. Frisby's visual impairment also supports a holding that S. Frisby acted with an objective and subjective disregard of the extreme degree of risk posed by his conduct.

c. Failure to Stop and Render Aid

Furthermore, Garcia has presented evidence that S. Frisby knew of the collision and chose to flee, rather than stop and render aid. Again, the mere fact that S. Frisby's failure to stop and render aid occurred after the collision does not make it irrelevant to a determination of whether he was grossly negligent and whether that gross negligence caused Garcia's injuries. *See* RESTATEMENT (THIRD) OF TORTS § 40 (A.L.I. 2004) (recognizing an affirmative duty to stop and render aid following an accident caused by the driver's negligent conduct); *Rangel v. Robinson*, No. 01-05-00318-CV, 2007 WL 625042, at *7 (Tex. App.—Houston [1st Dist.] Mar. 1 2007, pet. denied) (affirming an award of punitive damages based in part on the defendant's failure to stop and render aid). Rather, it may be relevant to the extent it elucidates S. Frisby's state of mind at the time of the incident. *Mohlenhoff*, 2024 WL 4956636, at *3.

To the extent Defendants maintain that S. Frisby was unaware of the collision, Garcia has put forth evidence to the contrary. In Trunell's affidavit, Trunell states that "Because of the dangers the tractor-trailer created for other motorists, my husband attempted to get the attention

of the driver of the Lucky Brothers rig by honking, signaling, and flashing lights. I saw and heard other vehicles making similar efforts." Additionally, Partida, who has experience as a commercial truck driver, states in his affidavit that he "was shocked that Frisby did not stop after he hit Garcia's vehicle. As a commercial truck driver, I know that a driver in a collision of this magnitude would have felt the impact." Partida further notes that he "concluded Frisby knew he had been in a collision because I witnessed him respond to the impact by sharply correcting back into his lane of travel." These statements provide evidence of a subjective awareness of the collision by S. Frisby, which would have then required a conscious decision on his part to depart from the scene.

Such a choice reflects a conscious indifference to an extreme risk of harm, as by failing to stop and render aid, he left Garcia immobilized on a busy highway without any way to block or slow traffic. Additionally, by not calling emergency services, S. Frisby risked delaying medical attention reaching Garcia following an incident severe enough that both witnesses feared the loss of life. As a general matter, S. Frisby's actions reflect a conscious indifference to Garcia's well-being and the danger and harm caused by his actions. Thus, evidence of S. Frisby's decision not to stop and render aid supports a finding of gross negligence.

Hence, in viewing the evidence in the light most favorable to Garcia, a reasonable jury could conclude that S. Frisby was grossly negligent. S. Frisby's prior knowledge of his vision impairment, the impact that such impairment may have had on his driving on the day in question, and his blatant disregard for safety, before and after the collision, all support a conclusion that S. Frisby acted in a manner that was grossly negligent. Thus, the court is of the opinion that

Defendants' motion on the issue of gross negligence should be denied with respect to Y. Frisby, as the surviving heir and spouse of S. Frisby.

2. Gross Negligence of Lucky Brothers

Garcia, however, has failed to raise a genuine dispute of material fact regarding whether Lucky Brothers was grossly negligent. Asserting a claim of gross negligence against a corporation requires the plaintiff to show by clear and convincing evidence that the corporation itself committed gross negligence. *Anderson*, 462 S.W.3d at 250. Because a corporation acts only through its agents, there are three ways for a corporation to be held liable for gross negligence: (1) if it has "committed acts of gross negligence by the actions of a vice-principal;" (2) "if it authorizes or ratifies an agent's gross negligence;" or (3) "if it is grossly negligent in hiring an unfit agent." *Id.* (citing *Ellender*, 968 S.W.2d at 921-22). In determining whether a corporation is grossly negligent, the fact finder "must look to the totality of the surrounding facts and circumstances." *Id.* "If the totality of the evidence is sufficient to lead to the inference that agents of the corporation were aware of the risk to which others were being exposed, such an inference is sufficient to support corporate liability." *Id.*

In the present case, Garcia maintains that Lucky Brothers was grossly negligent, as S. Frisby was an unfit agent and it ratified S. Frisby's gross negligence. As a preliminary matter, in discussing Lucky Brothers' purported gross negligence, it is worth noting that Garcia proffers little to no analysis. Instead, she opts to discuss a number of cases without ever substantively addressing the applicability, similarities, or relevance of said cases.[7] Specifically, in analyzing

[5] In discussing various cases, Garcia conclusorily states that the present case is like the cases upon which she relies. Garcia, however, does not endeavor to explain *how* the present case resembles those cited and discussed.

Lucky Brothers' potential liability, Garcia does little more than make conclusory statements that "Steve Frisby was an incompetent and unfit employee who created an unreasonable risk of harm to [Garcia]" and that there is "legally sufficient evidence of the negligence and gross negligence of Lucky Brothers in entrusting the company vehicle to an incompetent employee." Garcia does not, however, say how Lucky Brothers was grossly negligent or point out any evidence that supports such allegations of gross negligence. Nevertheless, the court will attempt to construe Garcia's arguments in light of the facts and evidence available.

a. Gross Negligence—Employing an Unfit Agent

Garcia first asserts that "Texas courts have held that evidence of a defendant's policies or practices relating to safety regulations are relevant to establishing negligence or gross negligence." *See Martinez v. Kwas*, 606 S.W.3d 446, 457 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). The only practices and procedures mentioned in Garcia's responsive briefing, however, are Lucky Brothers' failure to maintain a fully and federally compliant driver qualification file for S. Frisby and Lucky Brothers' lack of policies and procedures governing safety investigations following an incident. Although Lucky Brothers' conduct and lack of procedures may be imprudent, the court cannot say that it rises to the level of gross negligence.

Regarding the driver qualification file, many of the missing items pertain to S. Frisby's driving record and the gap in his employment history prior to when Lucky Brothers hired him. The absence of that information from S. Frisby's file, while important, does not support a finding of gross negligence. Lucky Brothers' failure to document S. Frisby's qualifications is not automatically indicative of a failure to investigate his qualifications before hiring him. The above assessment is especially true where, as here, S. Frisby had all the appropriate certifications,

medical exemptions, and licenses necessary to operate a commercial vehicle.[8] Thus, even in viewing the evidence in the light most favorable to Garcia, the court cannot conclude that a genuine dispute of material fact exists as to whether Lucky Brothers, in 2023, was grossly negligent in employing and entrusting a commercial vehicle to S. Frisby based on its failure to maintain an appropriate driver qualification file.

Similarly, Lucky Brothers' lack of policies and procedures governing safety investigations, while admittedly ill-advised, is not grossly negligent. As far as the court can discern, Garcia seemingly suggests that the lack of policy or procedure demonstrates a conscious disregard for the extreme degree of risk posed by failing to investigate safety incidents properly. An absence of a policy or procedure, however, does not equate to the absence of safety investigations. In her response, Garcia notes that Arjun Gossian ("Gossian"), the owner and operator of Lucky Brothers, is the "employee in charge of investigating safety incidents," and details the investigation he undertook in response to S. Frisby's collision. Although Garcia may contest the quality of Gossian's investigation, there is nothing to suggest the conscious disregard required to prevail on a claim for gross negligence. Thus, evidence of Lucky Brothers' lack of a formal policy governing post-incident safety investigations does not create a genuine dispute of a material of fact on Garcia's gross negligence claim.

In support of her proposition that Lucky Brothers was grossly negligent, Garcia also discusses a series of cases in which Texas courts have imposed liability for gross negligence on

[8] Additionally, the court finds Garcia's contention that Lucky Brothers was grossly negligent in hiring S. Frisby because he parted from his last company due to his "driving record" unpersuasive. As noted above, S. Frisby was licensed to drive a commercial vehicle, there is no evidence he had any restrictions placed on his commercial license, and Garcia has not put forth any evidence of the contents of S. Frisby's pre-2011 driving record. Thus, the evidence is insufficient to support a conclusion that Lucky Brothers was grossly negligent in hiring S. Frisby.

a corporate employer for hiring or continuing to employ a driver of a commercial vehicle. Notably, however, each case cited reflects repeated instances of misconduct, violations, or incidents on the part of the driver who is the subject of the litigation. *See Aikens v. Cen. Or. Truck Co., Inc.*, No. 4:20-CV-00567, 2021 WL 4206312 at * 4 (E.D. Tex. Sept. 16, 2021) (citing evidence of a failure to take disciplinary or corrective action following "repeated violations" as sufficient to create a genuine dispute of material fact on gross negligence); *Greenwood Motor Lines, Inc. v. Bush*, No. 05-14-01148-CV, 2017 WL 1550035, at *11 (Tex. App.—Dallas Apr. 28, 2017, pet. denied) (holding that evidence of the corporation's knowledge of multiple prior accidents and repeated "pattern logging" sufficient to support a finding of gross negligence). Additionally, in many of these cases, the corporate employer ignored or did not take the driver's disregard for safety seriously. *See Aikens*, 2021 WL 4206312 at * 4; *Greenwood Motor Lines, Inc.*, 2017 WL 1550035, at *11. In contrast, at the time of the relevant collision, S. Frisby had been involved in only one prior incident during his seven-year tenure with Lucky Brothers.[9] Additionally, Garcia presents no evidence of any other significant or recurring violations that were disregarded by Lucky Brothers, except for those occurring after the collision with Garcia. Thus, the court finds these cases to be distinguishable and inapplicable.

Notably, at the time Lucky Brothers hired S. Frisby, he had all the appropriate qualifications and necessary medical exemptions. Additionally, while there is evidence suggesting that he was terminated by his previous employer due to his driving record, there is nothing in the summary judgment record indicating the nature or gravity of his prior driving history and three

[9] There is nothing in the record to indicate that the prior incident raised any significant safety concerns, as it involved S. Frisby's backing into another tractor-trailer at a Love's Truck Stop in Oklahoma approximately two years before his collision with Garcia.

years had elapsed since he had left that position. Moreover, after his initial hire, S. Frisby worked for Lucky Brothers for seven years without any major incidents. Therefore, the court finds Garcia's contention that S. Frisby was an unfit agent and that Lucky Brothers was grossly negligent in hiring and employing him to be without merit.

b. Gross Negligence—Ratification

Alternatively, Garcia asserts that Lucky Brothers "may be assessed exemplary damages for ratification of its employee's grossly negligent conduct." Gross negligence via ratification requires the plaintiff to demonstrate that the corporate employer "confirmed, adopted, or failed to repudiate" an employee's grossly negligent conduct. *Cupp v. Nucor Corp.*, No. 6:23-CV-855, 2026 WL 87123, at *7 (W.D. Tex. Jan. 12, 2026). Thus, for Garcia's claims against Lucky Brothers to survive summary judgment, she must raise a genuine dispute of material fact as to whether it confirmed, adopted, or failed to repudiate S. Frisby's gross negligence.

Again, in support of her contention regarding Lucky Brothers' liability for S. Frisby's conduct, Garcia proceeds to discuss multiple Texas cases, wherein the courts held that ratification presents a valid basis for imposing punitive damages on a corporate employer. Garcia does not, however, identify any actions on the part of Lucky Brothers that purportedly support her claims of ratification. As far as the court can discern, the only conduct supporting Garcia's allegations of ratification is Lucky Brothers' failure to impose more substantial discipline on Frisby following the incident with Garcia.[10] That alone, however, does not raise a fact issue as to whether Lucky Brothers acted with a conscious disregard of an extreme degree of risk by ratifying S. Frisby's

[10] According to Gossian, Lucky Brothers' owner, operator, and safety investigator, he issued S. Frisby a verbal warning following the collision with Garcia.

conduct. As noted above, at the time of the incident with Garcia, S. Frisby had only been involved in one prior incident while employed by Lucky Brothers, which was relatively minor and occurred two years previously. Thus, the failure to discipline S. Frisby more harshly seemingly reflects Lucky Brothers' assessment at the time that the collision was the exception rather than the norm. Accordingly, Garcia has failed to demonstrate a genuine dispute of material fact on the issue of whether Lucky Brothers engaged in gross negligence by ratifying S. Frisby's conduct.

In sum, the court acknowledges that the evidence presented suggests potential negligence on the part of Lucky Brothers. The court cannot, however, on the record before it, conclude that Lucky Brothers' actions reflect a conscious disregard of an extreme degree of risk that is required to impose liability for gross negligence on a corporate employer. Therefore, summary judgment is appropriate on Garcia's claims for gross negligence against Lucky Brothers.

## III. Conclusion

Based on the foregoing analysis, Garcia's Motion for Partial Judgment on the Pleadings and Alternative Motion for Partial Summary Judgment (#33) is GRANTED in part and DENIED in part. Accordingly, the court denies summary judgment on Garcia's claims for gross negligence against Y. Frisby, as the surviving heir and spouse of S. Frisby. Summary judgment, however, is granted as to Garcia's claims for gross negligence against Lucky Brothers.

SIGNED at Beaumont, Texas, this 4th day of August, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE